UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
NICOLE TRAINOR,                    )
                                   )
        Plaintiff,                 )
                                   )
     v.                            )   C.A. No. 20-426 WES
                                   )
PRIMARY RESIDENTIAL MORTGAGE, INC.,)
                                   )
        Defendant.                 )
_____)

**MEMORANDUM AND ORDER**

Before the Court is Defendant Primary Residential Mortgage, Inc. ("PRMI")'s Motion to Compel Arbitration, ECF No. 6. For the reasons that follow, Defendant's Motion is GRANTED.

I.   BACKGROUND[1]

In March 2018, PRMI offered to employ Plaintiff Nicole Trainor as a Business Development Representative. See Offer Letter 1-2, Ex. 1 to Johansen Aff., ECF No. 6-2. To accept, she was required to sign the PRMI Standard Employment Agreement ("Agreement"), which states that the parties agree to arbitrate "all claims or disputes, whether or not arising out of the Employee's employment by the Company, that the Company may have against the Employee, or that the Employee may have against the Company or against its Directors, Shareholders, Employees, or Agents." Agreement

---

[1] The Court accepts as true the facts alleged in Trainor's Complaint, ECF No. 1-1.

§§ IV.H.1, IV.H.2, ECF No. 6-2; see also Offer Letter 1-2. However, the Agreement excludes certain categories of claims from this arbitration requirement. Agreement §§ IV.H.3, IV.H.11. Shortly after receiving the offer, Trainor signed the Agreement and began working for PRMI. See Compl. ¶ 9, ECF No. 1-1; Agreement 16.

Several years before she was hired, Trainor had been seriously injured in a car accident, causing long-lasting pain and other complications. See Compl. ¶¶ 5-8. In October 2018, while employed at PRMI, she underwent surgery to address injuries caused by the car accident. Id. ¶¶ 13-14. To facilitate her recovery, she took a week-long vacation, and then worked from home for six weeks (with her supervisor's permission). Id. ¶ 17. At the end of the six weeks, she still could not drive, so she sought to extend the period of remote work for an additional four weeks. Id. ¶ 19. Apparently, a branch manager had not been aware of her work-from-home arrangement, and when he found out about the additional four-week request, the situation quickly devolved. Id. ¶¶ 20-30. PRMI terminated her employment on December 5, 2018, stating that the company needed her to be physically present in the office. Id. ¶ 26.

In September 2020, Trainor sued PRMI in Rhode Island Superior Court, alleging that her termination violated various state and federal laws. See Compl. 1. In particular, Trainor alleges that

PRMI failed to provide her with reasonable accommodations for her known disability.  See id.  After removing the case to this Court, PRMI sought to compel arbitration.  See Def.'s Mem. Supp. Mot. Compel Arbitration 1, ECF No. 6-1.

II. LEGAL STANDARD[2]

"[T]here is a split in authority as to whether [motions to dismiss based on arbitrability] must be brought pursuant to Rule 12's section (b)(1) or section (b)(6), . . . or perhaps considered with an analysis entirely separate from the Rule 12(b) rubric."  Álvarez-Maurás v. Banco Pop. of P.R., 919 F.3d 617, 623 n.8 (1st Cir. 2019) (citation and quotations omitted).  The First Circuit has not chosen a preferred path for such claims.  See id. at 623-24 & n.8.  However, because the Court's ruling here does not rest on evidentiary findings, the distinctions between these potential paths are immaterial.  See id. at 623 n.8.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[2] PRMI asserts that this Court uses a summary judgment standard when reviewing a motion to compel arbitration. See Def.'s Mem. Supp. Mot. Compel Arbitration 4 (citing Britto v. St. Joseph Health Servs. of R.I., C.A. No. 17-234, 2018 WL 1934189, at *1 (D.R.I. Apr. 23, 2018)).  The Court disagrees that a summary judgment standard is appropriate here.  In Britto, unlike here, the parties engaged in limited discovery on the issue of arbitration prior to the Court's decision on the motion to compel. See Oct. 23, 2017 Text Order, Britto, C.A. No. 17-234.  Here, the relevant factual background is derived from the Complaint and other documents the Court can permissibly consider in a Rule 12(b) inquiry.

3

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Álvarez-Maurás, 919 F.3d at 622. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). In this inquiry, the Court considers the Complaint, "documents the authenticity of which are not disputed by the parties[,] . . . documents central to the plaintiffs' claim[s,]" and "documents sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citation and quotations omitted).

In accordance with the choice-of-law provision in the contract, see Agreement § IV.H.4, the Court will look to Utah on questions of state law. See Def.'s Mem. Supp. Mot. Compel Arbitration 3 (stating that Utah law should apply); Pl.'s Resp. 4 n.2, 11 n.7 (stating that Rhode Island law might apply instead, but that the differences between the law of the two states are immaterial on these facts).

III. DISCUSSION

Pursuant to the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; see also Utah Code § 78B-11-107(1)

4

("An agreement . . . to submit to arbitration any existing or subsequent controversy arising between the parties . . . is valid, enforceable, and irrevocable exception upon a ground that exists at law or in equity for the revocation of a contract."). Both Utah and Federal law favor the enforcement of arbitration agreements between contracting parties. See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018); Cent. Fla. Inv., Inc. v. Parkwest Assocs., 40 P.3d 599, 606 (Utah 2002).

A party seeking to compel arbitration must show that (1) a valid arbitration agreement exists, (2) the movant is entitled to invoke the arbitration clause, (3) the other party is bound by that same clause, and (4) the claim(s) fall within the scope of the clause. See Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 5 (1st Cir. 2014). If all four elements are satisfied, the Court must compel the parties to arbitrate. 9 U.S.C. § 4. Challenges to the validity of arbitration agreements fall into two camps. Challenges specific to an arbitration provision within a larger employment contract are decided by the Court, while challenges to the contract as a whole fall within the purview of the arbitrator. See Rent-A-Center W., Inc. v. Jackson, 561 U.S. 63, 70 (2010).

On first inspection, the Agreement – whose authenticity Trainor does not dispute – satisfies all four elements. However, Trainor argues that (1) the Agreement and its arbitration provision

5

terminated when the employment relationship ended; (2) the arbitration provision is unconscionable; and, (3) even if the Court grants the request to compel arbitration, the instant action should be stayed rather than dismissed. See Pl.'s Resp. to Def.'s Mot. to Dismiss and Compel Arbitration ("Pl.'s Resp.") 1, ECF No. 8.

1.  Survival of the Agreement

Trainor first argues that the Agreement, and by extension the arbitration provision, expired when PRMI fired her. See Pl.'s Resp. 1. However, "[w]hen two parties commit to arbitrate disputes arising under a contract, they ordinarily mean to bind each other to arbitrate such disputes even if the grievant doesn't complain until after the contract expires." Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 513-14 (1st Cir. 2020) (quoting Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB, 501 U.S. 190, 205, 208 & n.3 (1991)). Thus, as a rule of thumb, the Court must presume that "the arbitration clause (independent as it is) survives the underlying contract." Id.

Such is the case here. While the Agreement does contain a survivability section, and that section does not refer to the arbitration provision specifically, see Agreement § IV.M, the plain language of the Agreement (along with common sense) indicates that employment-related disputes concerning events from the period of employment (including the termination of that employment) are governed by the arbitration provision, see Agreement § IV.H

("Employer and Employee recognize that differences may arise between them <u>in connection with the employment relationship</u>. . . . [B]ecause not all disputes can be resolved internally, Employer and Employee hereby agree to this dispute resolution procedure . . . ." (emphasis added)); <u>see also</u> <u>Biller</u>, 961 F.3d at 513-14. Trainor's entire Complaint arises from and relates to her employment relationship with PRMI. <u>See</u> Compl. 8-10. Thus, the arbitration provision applies to her claims, despite the fact that she was fired.

Finally, whether the Agreement is still in effect is a matter of contract interpretation that, according to the Agreement, is for the arbitrator to decide. <u>See</u> Agreement § IV.H.2 ("Unless expressly excluded . . . , Covered Claims shall include any and all procedural, substantive and gateway issues, including, without limitation, any dispute between the Parties relating to the scope of the Arbitrator's powers, the interpretation or enforceability of this Agreement or any part thereof, or the arbitrability of any dispute."). Thus, Trainor's timing argument cannot carry the day.

    2.   Unconscionability of Arbitration Provision

Next, Trainor argues that the arbitration provision is unconscionable and therefore must be disregarded. <u>See</u> Pl.'s Resp. 1. Utah's unconscionability test has two prongs: substantive and procedural. <u>See</u> <u>Ryan v. Dan's Food Stores, Inc.</u>, 972 P.2d 395, 402-04 (Utah 1998).

7

      A.    Substantive Unconscionability

Under the substantive component, the Court "consider[s] whether a contract's terms are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an overall imbalance in the obligations and rights imposed by the bargain." Ryan, 972 P.2d at 402. "Even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable - the terms must be so one-sided as to oppress . . . an innocent party." Id. Trainor argues that the arbitration provision is substantively unconscionable because (i) the arbitration requirement lacks mutuality and (ii) the required venue of Utah is unfair. Pl.'s Resp. 12, 17.

      i.    Lack of Mutuality

The Agreement identifies arbitration as the sole method for resolving "all claims or disputes, whether or not arising out of the Employee's employment by the Company, that the Company may have against the Employee, or that the Employee may have against the Company or against its Directors, Shareholders, Employees, or Agents." Agreement §§ IV.H.1, IV.H.2. However, four categories of disputes are excluded from the arbitration requirement: (1) disputes regarding the interpretation of the Agreement's class action provision, (2) certain state and federal administrative claims, (3) lawsuits by PRMI asserting that Trainor breached the non-solicitation and/or non-disclosure provisions of the

8

Agreement, and (4) claims by PRMI concerning contracts made by Trainor on PRMI's purported behalf.  See Agreement § IV.H.3.

Apparently, Utah courts have not addressed lack of employer-employee mutuality in any published decision.[3]  The closest case may be Miller v. Corinthian Colleges, Inc., 769 F. Supp. 2d 1336, 1345 (D. Utah 2011), in which the district court held that an arbitration agreement was not unconscionable under Utah law, despite plaintiff's argument that "the arbitration agreement[s] [we]re effective only against the students."  However, given the lack of analysis of the mutuality issue and the differences between educational and employment disputes, Miller cannot end the inquiry.

Therefore, in an effort to predict how the Utah Supreme Court would resolve this question, this Court looks to decisions from other jurisdictions.  See Rhode Island v. Atl. Richfield Co., 357

---

[3] As Plaintiff points out, the Utah Court of Appeals once quoted in an explanatory parenthetical the following language from an Arkansas decision:  "[O]ne party cannot limit another party to the exclusive remedy of arbitration, while retaining the ability to pursue other judicial remedies for themselves."  Deer Crest Assoc. I, LC v. Silver Creek Dev. Grp., LLC, 222 P.3d 1184, 1187 (Utah Ct. App. 2009) (quoting Tyson Foods, Inc. v. Archer, 356 Ark. 136, 147 S.W.3d 681, 687 (2004)); see also see Pl.'s Resp. 14.  However, Deer Crest did not involve an agreement that lacked mutuality.  Rather, the plaintiff sought judicial relief despite a bilateral arbitration provision stating that all claims would be arbitrated.  See Deer Crest, 222 P.3d at 1187.  Thus, Deer Crest does not provide meaningful support to either side.

9

F. Supp. 3d 129, 135 (D.R.I. 2018) (citing Butler v. Balolia, 736 F.3d 609, 612-13 (1st Cir. 2013)).

Under the majority view, "mutuality of obligation does not mean [] that the terms of the contract must be equally balanced so that one side cannot benefit from the bargain more than the other." Raasch v. NCR Corp., 254 F. Supp. 2d 847, 856 (S.D. Oh. 2003). Nor does mutuality require that the parties agreed to arbitrate every dispute, or that the claims each party agreed to arbitrate "were of equal concern." Id. at 857. Instead, as a general rule, "[m]utuality requires only that [both parties] be bound to the terms of any dispute that is required to be submitted to the arbitrator." Id. Under that formulation, the arbitration provision here is enforceable.

Moreover, the decisions cited by Trainor are distinguishable from the case at bar. In Burnett, the Washington Supreme Court held that an arbitration provision was substantively unconscionable. See Burnett v. Pagliacci Pizza, Inc., 470 P.3d 486, 490 (Wash. 2020). However, unlike the Agreement here, the provision in Burnett required the employee to try to resolve the issue internally, first with a supervisor and then with a company designee, prior to submitting an arbitration claim. Id. at 496. These requirements "(1) operate[d] as a complete bar as to terminated employees because they ha[d] no way to report the matter to a supervisor, (2) shorten[ed] the statute of limitations for

10

any employee because the procedures d[id] not toll the statute of limitations . . . , and (3) provide[d] no exception to the requirement for supervisor review where a supervisor [wa]s the person subjecting the employee to unfair treatment." Id. Here, conversely, there are no gateway requirements. Rather, either party may bring a claim through arbitration so long as notice is given to the opposing party. Agreement § IV.H.9.

In the other cases cited by Trainor, arbitration clauses were held to be unconscionable because the clauses - either expressly or in practical effect - required one side to arbitrate all of its claims while giving the other side flexibility to bring any claim in court. See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 168 (5th Cir. 2004) (arbitration requirement expressly applied to only one party); Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 935 (9th Cir. 2001) (arbitration provision exempted any conceivable claim brought by the stronger party); U.S. ex rel. TBI Invs., Inc. v. BrooAlexa, LLC, 119 F. Supp. 3d 512, 535-36 (S.D.W. Va. 2015) (one side had "sole discretion" to determine whether a dispute would proceed to arbitration); Wis. Auto Title Loans, Inc. v. Jones, 714 N.W.2d 155, 173-74 (Wis. 2006) (lender could bring any conceivable claim against borrower in court); Taylor v. Butler, 142 S.W.3d 277, 286 (Tenn. 2004) (same); E-Z Cash Advance, Inc. v. Harris, 347 Ark. 132, 141 (2001) (same).

Trainor argues that her contract with PRMI is equally lopsided, giving PRMI "the option of litigating any claim it would ever have against an employee in court." Pl.'s Resp. 15. However, the four exceptions to the arbitration requirement are not quite so broad.

First, the arbitration provision does not apply to disputes that involve the "meaning, interpretation and enforceability" of the class action waiver provision. See Agreement § IV.H.3(a). This exclusion provides flexibility regarding hypothetical actions brought by Trainor, not by PRMI. Therefore, this exclusion provides no support to Trainor's unconscionability argument.

Second, the arbitration provision excludes claims for state unemployment insurance, state and federal disability insurance, state workers' compensation, and benefits governed by the Employee Retirement Income Security Act of 1974, as well as administrative claims before the Equal Employment Opportunity Commission or other human rights agencies. See Agreement § IV.H.3(b)-(d). Trainor asserts that these types of claims must be excluded by law. See Pl.'s Resp. 14 n.8. Whether or not Trainor is right, these exclusions do not inure solely to PRMI's benefit; if anything, the opposite is true.

Third, the Agreement bars Trainor from entering into any contract on behalf of PRMI; the arbitration requirement, in turn, excludes claims brought by PRMI against Trainor for violations of

12

that prohibition.  See Agreement §§ II.B.1, IV.H.3.  Unlike the first two exceptions, this exception favors PRMI.  However, this exception is sufficiently cabined because it involves a very specific scenario – one in which Trainor hypothetically misrepresents herself as an agent with authority to enter into a contract on PRMI's behalf.  The lack of mutuality in this exclusion is supported by the common-sense assumption that an employee is more likely to enter into a contract as the purported agent of the employer than vice versa.

The fourth exception is for claims brought by PRMI alleging that Trainor breached her duties under the parties' non-solicitation and proprietary information agreement (a separate document from the Agreement).  Agreement §§ II.A.7(a), II.H.11.  This exception is the broadest, and thus comes closest to tipping the balance in favor of unconscionability.  However, notwithstanding this exception, there are many claims that could plausibly be brought by PRMI that would be subject to arbitration, thus making the arbitration provision distinguishable from the entirely one-sided clauses struck down in other states.[4]  See, e.g., Iberia Credit Bureau, 379 F.3d at 168.

---

[4] To the extent that California law might hold that the Agreement here is unconscionable, see Stirlen v. Supercuts, Inc., 60 Cal. Rptr. 2d 138, 152 (Cal. App. 1st Dist. 1997), as modified (Feb. 10, 1997), the Court concludes that California's approach to mutuality is inconsistent with that espoused by the Utah Supreme

Although the lack of mutuality provides some support for Trainor's arguments, it is insufficient to render the arbitration provision unconscionable.

ii. Location

The Agreement states that any arbitration will occur in Utah. Agreement § IV.G. Trainor argues that a Utah-based arbitration "significantly increase[s] the likelihood of partiality" and that the expense and inconvenience of traveling from Rhode Island to Utah is prohibitive. Pl.'s Resp. 20.

The Court disagrees that a Utah arbitrator is likely to have a home-state bias. Per the Agreement, arbitration must be conducted by an arbitrator from the American Arbitration Association ("AAA"), or by another mutually agreed upon arbitrator. AAA arbitrators are governed by rules meant to ensure impartiality. See, e.g., AAA Employment Rule 15, www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf (requiring disclosure of potential sources of bias); id. at Rule 16 (requiring disqualification of impartial arbitrator). Therefore, the mere fact that PRMI is headquartered in Utah does not raise the specter of partiality on the part of a hypothetical arbitrator. See Def.'s Reply to Pl.'s Opp'n to Mot. to Compel Arbitration ("Reply") 15, ECF No. 12.

---

Court, see Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 402-04 (Utah 1998).

14

Trainor's second argument is that travelling to Utah to arbitrate would be logistically and financially oppressive. See Pl.'s Resp. 18. However, because PRMI is willing to conduct the arbitration remotely, see Reply 14, this argument is moot.

### B. Procedural Unconscionability

Trainor next argues that she did not have a reasonable opportunity to understand the terms of the Agreement because she was twenty-nine years old with a disabled two-year-old daughter, she was working a "dead-end job," and she only completed a high school education. See Pl.'s Resp. 21. She alleges that PRMI was aware of her dire situation, and, without an interview or discussion with PRMI, she was instructed to sign the employment documents in an email. See id. at 21-22. However, these allegations speak to the unconscionability of the employment contract as a whole, rather than the arbitration agreement in particular. Therefore, whether the employment contract is unconscionable is a decision that must be left to the arbitrator. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); Fansworth v. Towboat Nantucket Sound, Inc., 780 F.3d 90, 96 (1st Cir. 2015).

### 3. To Stay or to Dismiss

Under the FAA, if "any issue [before the Court is] referable to arbitration under an agreement in writing[,]" the Court "shall on application of one of the parties stay the trial of the action

15

until such arbitration has been had." 9 U.S.C. § 3. Nonetheless, "in this circuit a district court can, in its discretion, choose to dismiss the lawsuit, if all claims asserted in the case are found to be arbitrable." Next Step Med. Co. v. Johnson & Johnson Int'l., 619 F.3d 67, 71 (1st Cir. 2010) (citing Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998)). Here, all of Trainor's claims are subject to the arbitration provision. Therefore, the Court will dismiss Trainor's Complaint without prejudice to refiling if the arbitrator determines that any claim is not arbitrable.

IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration, ECF No. 6, is GRANTED, and Plaintiff's Complaint, ECF No. 1-1, is DISMISSED without prejudice.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date:  June 15, 2021